**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Roy W. COLLINS,**
**Defendant–Appellant.**

**No. 90–6077.**

United States Court of Appeals,
Tenth Circuit.

Nov. 27, 1990.

Robert G. McCampbell, Asst. U.S. Atty., (Timothy D. Leonard, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Susan M. Otto, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Before SEYMOUR, BALDOCK and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant Roy Collins was convicted by a jury on three counts of federal income tax evasion, 26 U.S.C. § 7201. He now appeals arguing that the district court improperly instructed the jury on the issue of good faith and violated his sixth amendment right to counsel by revoking the *pro hac vice* admission of his privately retained attorney. Our jurisdiction over this direct criminal appeal arises under 28 U.S.C. § 1291. We affirm.

### I. Good Faith.

Viewing the evidence in the light most favorable to the government, *United States v. Spedalieri*, 910 F.2d 707, 708 (10th Cir.1990), we summarize the facts as follows. Defendant, a fifty-seven-year-old aircraft structural designer, filed federal income tax returns and paid taxes from the time he began working until 1979. At that time, defendant claims to have become convinced that he was not obligated to pay taxes. Defendant purportedly believed that labor constitutes property which, when exchanged for wages, produces no net gain subject to taxation as "income." At other times, defendant claimed that he was not a "person" under the Internal Revenue Code and argued he was not subject to taxation because he had not entered into a regulatory relationship with the United States. Defendant acknowledged that he developed these views after attending several meetings with like-minded individuals, but denied being a tax protester. Defendant testified that he "disagreed with the philosophy" of the IRS concerning what constituted income, rec. vol. V at 186, and felt that he was not obligated to pay taxes until he received a satisfactory explanation from the IRS concerning his legal beliefs, *id.* at 233.

While employed at CDI Corp. between 1982 and 1984, defendant stated on his W–4 forms that he had not owed any taxes in the previous year and did not expect to owe any taxes in the present year. Consequently, although he was not eligible to claim exempt status, none of defendant's wages were withheld between 1982 and 1984, with one exception.[1] Defendant earned taxable income of $48,271 in 1982, $35,359 in 1983 and $49,080 in 1984; his estimated tax liability for those years was $17,862, $10,170 and $15,784 respectively. Between 1982 and 1984, defendant failed to file a tax return and paid no federal income taxes.

At the close of trial, the district court instructed the jury on defendant's good faith defense:

### Instruction No. 26

### GOOD FAITH OF THE ACCUSED

[B]oth the offenses charged in the indictment and the lesser included offenses require proof of the accused's willfulness as an essential element.... If the accused's actions or failure to act was the result of a good faith misunderstanding as the requirements of the law, then the actions or failure to act were not "willful."

. . . .

An accused's disagreement with the law or his own belief the law should be held to be unconstitutional—no matter how earnestly he holds those beliefs—is not a good faith misunderstanding of the law. On the other hand, the accused may hold beliefs concerning his duties under the law which, although not reasonable, are held in good faith. Such a good faith belief is a defense to the charges in the indictment as well as lesser included offenses.

. . . .

[I]f the defendant held a good faith belief that the law *did not* apply to him, he would not have acted willfully as he is charged. This is so whether or not the defendant's belief was reasonable. However, if you regard his belief as being highly unreasonable, you may consider this along with all other evidence on the question of whether his belief was indeed genuine or merely feigned or made-up....

Rec. vol. I, doc. 99 (emphasis in original). Defendant argues that this instruction confused the jury by improperly focusing its inquiry on the objective reasonableness of defendant's belief instead of whether such belief was genuine. We review jury instructions as a whole to determine whether the instruction in question accurately stated the governing law and provided the jury with an ample understanding of the applicable issues and legal standards. *United States v. Bedonie,* 913 F.2d 782, 791 (10th Cir.1990).

A good faith misunderstanding of the duty to pay income taxes can negate the willfulness element of tax evasion charge, "and '[t]he misunderstanding need not have a reasonable basis to provide a defense.'" *United States v. Harting,* 879 F.2d 765, 767 (10th Cir.1989) (quoting *United States v. Hairston,* 819 F.2d 971, 972 (10th Cir.1987)); *but see United States v. Cheek,* 882 F.2d 1263, 1270 (7th Cir.1989) (rejecting subjective reasonableness standard followed by other circuits in favor of objective reasonableness standard), vacated —— U.S. ——, 111 S.Ct. 604, —— L.Ed.2d —— (1991). However, "although not itself the standard by which to evaluate good faith, the reasonableness of a good-faith defense is a factor which the jury may properly consider in determining whether a defendant's asserted beliefs are genuinely held." *United States v. Mann,* 884 F.2d 532, 537 n. 3 (10th Cir.1989). In the instant case, the district court explained to the jury that, although defendant's subjective belief

---

1. In 1983, the government withheld from defendant's wages a $525 penalty and $201 in taxes.

Rec. vol. IV at 61–62.

that he was not obligated to pay taxes did not have to be reasonable to effectuate a valid good faith defense, the objective reasonableness of defendant's belief could be considered, along with other evidence, in determining whether his subjective belief was genuine. We find the court's instruction unambiguous and fully consistent with our holdings in *Mann* and *Harting*.

## II. Right to Counsel.

Attorney Jeffrey A. Dickstein made his first appearance on defendant's behalf on April 17, 1989 after being admitted *pro hac vice* by the district court.[2] Defendant apparently retained Dickstein because counsel agreed with defendant's views on the invalidity of federal income tax laws. Rec. vol. IV at 15. Dickstein's obstreperous attitude was first illustrated by his entry of appearance which informed the court that his association with local counsel in compliance with local rules was "under duress." Rec. vol. I, doc. 17. On May 1, 1989, Dick-

stein filed ten pretrial motions. The first filing was an 84–page motion to dismiss, lavishly larded with citations to the Declaration of Independence, colonial history and a plethora of nineteenth century Supreme Court cases. Rec. vol. IX, doc. 21. Dickstein argued that federal criminal jurisdiction only encompasses acts committed within the District of Columbia, on the high seas or on federal property; consequently the district court lacked jurisdiction over defendant.[3] *Id.* at 15, 80. Dickstein also argued that federal income taxes must be direct and apportioned to survive constitutional scrutiny. *Id.* at 37, 81. While acknowledging the "alleged ratification" of the sixteenth amendment, *id.* at 48, he insisted that the amendment only authorizes an income tax within the District of Columbia and the territorial possessions of the United States. *Id.* at 48–49. Finally, Dickstein questioned whether defendant was an "individual" subject to taxation under the Internal Revenue Code.[4]

2. Dickstein's reputation preceded him. Admitted to practice law in California in 1976, Dickstein currently limits his practice to matters relating to federal individual income tax. Dickstein has practiced *pro hac vice* throughout the country in often rancorous proceedings before various federal district courts. In *Donnell v. United States*, No. A84–416 Civil, unpub. order (D.Alaska Jan. 16, 1986), the district court revoked Dickstein's *pro hac vice* admission after local counsel declined to assume responsibility for Dickstein's pleadings. While defending an individual on federal criminal tax evasion charges in Washington, Dickstein impugned the integrity of the district court during trial. *See United States v. Summet*, 862 F.2d 784, 785 (9th Cir.1988). The Ninth Circuit upheld the district court's formal censure of Dickstein as well as its prospective denial of *pro hac vice* status. *Id.* at 786–87. Based upon Dickstein's conduct in *Summet*, the Nevada federal district court denied his application for admission *pro hac vice* in *Nutter v. United States*, No. CV–88–17–PMB, unpub. order (D.Nev. Jan. 21, 1988). Following that court's denial, Dickstein remained in the courtroom and continued to disrupt the proceedings, disregarding the court's frequent admonitions that he remain silent. After repeated outbursts, the district court was obliged to order Dickstein removed from the courtroom by a United States marshal. *Id.* at 3 n. 3. In *Roat v. Commissioner*, 847 F.2d 1379 (9th Cir.1988), Dickstein raised a series of frivolous arguments challenging the authority of the IRS and the jurisdiction of the Tax Court. The Ninth Circuit

rejected Dickstein's contentions stating: "we publish this opinion in part to warn future appellants that the arguments we have rejected here have no place in this court." *Id.* at 1384.

3. Dickstein explained:

> The allegation that certain acts were committed within the Western District of Oklahoma ... is insufficient.... [I]t is incumbent upon the prosecution to prove that Guthrie, Oklahoma has been ceded to the United States by the State of Oklahoma, and that in the absence of such a showing, Defendant is entitled to have the indictment against him dismissed.

Rec. vol. IX, doc. 21 at 82. Dickstein advanced virtually identical arguments in *United States v. Jump*, 88–CR–003–E (N.D.Okla. Mar. 24, 1988) and *United States v. Reeves*, No. CR87–00027–01–P(J) (W.D.Ky. Apr 25, 1988). *See* rec. vol. X, doc. 51, ex. J & L.

4. According to Dickstein:

> Sections 1, 2 and 3 of the 1954 Internal Revenue Code state that the income tax is imposed on the taxable income of an "individual;" other than this, there is no other or further description in the same Code which defines or describes that "individual." There must be somewhere or someplace a legal description of that "individual" because otherwise every "individual" in the entire world would fall within this class. It is known that "individuals" in other countries having absolutely no connection with the United States can't possi-

Dickstein's second motion to dismiss argued that because the 1040 forms that defendant failed to file were not affixed with expiration dates, the indictment should be dismissed pursuant to the Paperwork Reduction Act, 44 U.S.C. §§ 3501–20. Rec. vol. IX, doc. 25. Dickstein's third motion sought to strike as surplusage language in the indictment alleging that defendant failed to file income tax returns or pay income tax to the IRS. Rec. vol. IX, doc. 24. His fourth motion sought to suppress all evidence obtained by a third-party summons issued by an IRS special agent. Rec. vol. IX, doc. 27.

Dickstein also filed on defendant's behalf a motion in limine seeking suppression of several items of evidence, including admissions defendant made to an IRS Special Agent. Rec. vol. IX, doc 30. In addition, he filed a motion for bill of particulars, rec. vol. IX, doc. 22, a motion for oral voir dire, rec. vol. IX, doc. 28, a motion to dismiss the indictment for grand jury abuse, rec. vol. IX, doc. 23, a motion for disclosure for exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), rec. vol. IX, doc 29, and a motion for *Jencks Act* material, rec. vol. IX, doc. 26.

The district court denied each of defendant's pretrial motions. Rec. vol. X, doc. 46. Thereafter, stating that "the defense motions evince a tactic of obfuscation and waste," the court issued an order to show cause why Dickstein's *pro hac vice* admission should not be revoked. Rec. vol. I, doc. 40 at 1. Dickstein responded with a written motion reiterating the legal positions advanced in his previous motions and arguing that the district judge should recuse himself.[5] After considering Dickstein's motion and the government's response,[6] the district court revoked Dick-

stein's admission *pro hac vice* and removed him from the case. Rec. vol. I, doc. 52. The court explained:

> The pleadings filed by Attorney Dickstein in this case signal the Court that permitting his future participation will obscure the issues, engulf the case with frivolity, and deflect the proceedings from their object—the orderly determination whether defendant has broken the law or not. Just as a court need not suffer the testimony of a purported expert witness that the moon is made of green cheese, it need not suffer the serving-up of legal swill by Attorney Dickstein in this case. This is so even if defendant, who recites his approval of Attorney Dickstein's pleadings, likes the recipe.

*Id.* at 2. In a supplemental order, the district court found that Dickstein violated Oklahoma Rules of Professional Conduct by raising frivolous arguments before the court and failing to cite contrary authority. Rec. vol. I, doc. 57 at 6–9. In light of those violations, the court held "that the interests in the fair and proper administration of justice ... outweigh [defendant's] interest in representation by the counsel of his choice." *Id.* at 10. Dickstein unsuccessfully petitioned this court for a writ of mandamus, *Dickstein v. Collins & Alley*, No. 89–6225, unpub. order (10th Cir. Oct. 10, 1989), whereupon the federal public defender was substituted as defense counsel.

## A.

The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defense." U.S. Const. am. VI. "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity

---

bly be the "individuals" described in the Code, but the Code itself contains no such limitation which statutorily excluded "individuals" in other parts of the world.
Rec. vol. IX, doc. 21 at 47.

5. Dickstein opined:
So long as Judge Alley and other federal judges consider themselves subject to the federal income tax, their belief system that "if I

have to pay so do you" eliminates any possibility of any Defendant receiving a fair trial. Rec. vol. X, doc. 48 at 8 n. 2.

6. Appended to the government's response to the district court's show cause order were transcripts and orders reflecting Dickstein's obstreperous conduct before other federal district courts. *See* rec. vol. X, doc. 51.

to secure counsel of his own choice." *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932).[7] The right to retain counsel of choice stems from a defendant's right to decide what kind of defense he wishes to present.[8] *United States v. Nichols,* 841 F.2d 1485, 1502 (10th Cir. 1988). "Attorneys are not fungible;" often "the most important decision a defendant makes in shaping his defense is his selection of an attorney." *United States v. Laura,* 607 F.2d 52, 56 (3d Cir.1979); *Nichols,* 841 F.2d at 1502. When a defendant is financially able to retain counsel, the choice of counsel rests in his hands, not in the hands of the state. *United States v. Richardson,* 894 F.2d 492, 496 (1st Cir.1990); *Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir.1985). A defendant's right to retain counsel of his choice therefore represents " 'a right of constitutional dimension,' " *United States v. Cunningham,* 672 F.2d 1064, 1070 (2d Cir.1982) (quoting *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir.1973)), the denial of which may rise to the level of a constitutional violation, *Birt v. Montgomery,* 725 F.2d 587, 592 (11th Cir.) (en banc), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984); *Wilson,* 761 F.2d at 278–79. When a court unreasonably or arbitrarily interferes with an accused right to retain counsel of his choice, a conviction attained under such circumstances cannot stand, irrespective of whether the defendant has been prejudiced. *United States v. Novak,* 903 F.2d 883, 886 (2d Cir.1990); *Fuller v. Diesslin,* 868 F.2d 604, 606 (3d Cir.1989); *United States v. Wheat,* 813 F.2d 1399, 1402 (9th Cir.1987), *aff'd,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *United States v. Panzardi Alvarez,* 816 F.2d 813, 818 (1st Cir.

1987); *Wilson,* 761 F.2d at 281. However, a defendant's right to retain counsel of his choice is not absolute and "may not 'be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' " *United States v. Gipson,* 693 F.2d 109, 111 (10th Cir.1982) (quoting *United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979)), *cert. denied,* 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983); *United States v. Freeman,* 816 F.2d 558, 564 (10th Cir.1987).

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *see Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–18, 75 L.Ed.2d 610 (1983) (no sixth amendment right to "meaningful" attorney-client relationship); *United States v. Weninger,* 624 F.2d 163, 166 (10th Cir.) (no sixth amendment right to counsel who agree with defendants, views on the invalidity of the tax laws), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *Richardson,* 894 F.2d at 498 (court may refuse to allow defendant to substitute counsel on the morning of trial); *Panzardi Alvarez,* 816 F.2d at 816 (defendants' right to retain counsel of his choice "cannot be manipulat-

---

**7.** *See also Chandler v. Fretag,* 348 U.S. 3, 10, 75 S.Ct. 1, 5, 99 L.Ed. 4 (1954) ("a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise the right to be heard by counsel would be of little worth"); *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ("[defendant] wished the benefit of the undivided assistance of counsel of his own choice. We think that such a desire on the part of an accused should be respected.").

**8.** A defendant's right to secure counsel of his choice is cognizable only insofar as defendant is

able to retain counsel with private funds. An indigent defendant must be provided with counsel at state expense, *Gideon v. Wainwright,* 372 U.S. 335, 343–44, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963), and appointed counsel are held to the same standard of competence as retained counsel, *United States v. Gipson,* 693 F.2d 109, 111 n. 1 (10th Cir.1982), *cert. denied,* 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983). However, "an indigent defendant does not have a right to choose appointed counsel." *United States v. Nichols,* 841 F.2d 1485 (10th Cir.1988).

ed to delay proceedings or hamper the prosecution"). A defendant's choice of retained counsel must be respected "unless it would unreasonably delay proceedings or burden the court with retained counsel who was incompetent or unwilling to abide by court rules and ethical guidelines". *Panzardi Alvarez*, 816 F.2d at 818. It "should be deprived only where such drastic action is necessary to further some overriding social or ethical interest". *United States Hobson*, 672 F.2d 825, 828 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). Courts therefore must balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice. *Nichols*, 841 F.2d at 1503; *Weninger*, 624 F.2d at 166; *Fuller*, 868 F.2d at 607; *Wheat*, 813 F.2d at 1402; *Panzardi Alvarez*, 816 F.2d at 816; *Wilson*, 761 F.2d at 280; *Cunningham*, 672 F.2d at 1070.

### B.

■ Before reaching the merits of defendant's sixth amendment claim, we address the effect of Dickstein's *pro hac vice* admission. Although the admission of attorneys *pro hac vice* is committed to the discretion of the district courts, denial of admission *pro hac vice* in criminal cases implicates the constitutional right to counsel of choice.[9] *Panzardi–Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990); *Fuller*, 868 F.2d at 607; *Panzardi Alvarez*, 816 F.2d at 816. A district court may deny admission *pro hac vice* to a defendant's counsel of choice when that attorney is unable to provide the defendant with competent representation. *See, e.g., United States v. Campbell*, 874 F.2d 838, 848–49 (1st Cir.1989) (counsel had

not been in a courtroom for over twenty-five years and lacked knowledge of defendant's case). Courts also may consider an attorney's ethical fitness before granting a motion to proceed *pro hac vice*. *Panzardi–Alvarez*, 879 F.2d at 980 (denial of *pro hac vice* status appropriate where attorney previously violated Fed.R.Crim.P. 44(c) and harassed judge outside chambers), *cert. denied*, —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990); *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir.1957) (denial of *pro hac vice* admission based upon "unlawyer-like conduct" justifiable), *cert. denied*, 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958). However, district courts must articulate reasonable grounds for denying *pro hac vice* admission to defendant's chosen counsel; mechanistic application of rules limiting such appearances is improper. *Fuller*, 868 F.2d at 611; *see Panzardi Alvarez*, 816 F.2d at 817 (simple numerical limitation of *pro hac vice* appearances violated defendant's right to retain counsel of choice where there was no record that allowing such admissions would have inhibited the fair and orderly administration of justice).

■ Attorneys admitted *pro hac vice* are held to the same professional responsibilities and ethical standards as regular counsel. Once admitted, *pro hac vice* counsel cannot be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar. *Kirkland v. National Mortgage Network*, 884 F.2d 1367, 1371 (11th Cir.1981); *Kohler v. Richardson–Merrell*, 737 F.2d 1038, 1054 (D.C.Cir.1984). Although district courts need not conduct a full-scale hearing every time an attorney's *pro hac vice* admission is revoked, counsel must be provided with notice and an opportunity to respond. *Johnson v. Trueblood*, 629 F.2d 302, 303 (3d Cir.1980); *United States v. Cooper*, 675 F.Supp. 753, 758 (D.R.I.1987).

---

**9.** The Supreme Court has rejected ·*attorneys'* claims that a state's denial of admission *pro hac vice* violates their rights under the Privilege and Immunities Clauses and the fourteenth amendment. *See Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985); *Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). The Court has not addressed, however, whether such a denial violates *defendants'* rights under the sixth amendment. *See Leis*, 439 U.S. at 442 n. 4, 99 S.Ct. at 701 n. 4; *Fuller v. Diesslin*, 868 F.2d 604, 607 (3d Cir.1989).

Here, the district court satisfied defendant's [10] right to procedural due process by providing notice and an opportunity to show cause why his counsel's admission *pro hac vice* should not be revoked. However, the district court indicated that Dickstein could be removed from the case more readily than a regular member of the bar.[11] Dickstein's conduct before the district court was subject to the same standard of professionalism as regular bar members. His behavior before other courts provided ample grounds to scrutinize his application for *pro hac vice* admission. However, because the district court in exercise of its discretion admitted Dickstein *pro hac vice*, the court's subsequent revocation of such status must be evaluated as though it had disqualified a regular member of the Western District of Oklahoma bar.

### C.

"Federal Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S.Ct. at 1697. When a district court finds that counsel has a conflict of interest, real or potential, it retains "substantial latitude" to disqualify counsel, even where a defendant consents to representation. *Id.* at 163, 108 S.Ct. at 1697–98. Moreover, an attorney may be dismissed for pursuing frivolous theories, even if he acts on the behest of the defendant. *See United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990). Violation of accepted rules of professional conduct which result in the "erosion of public confidence in the integrity of the bar and of the legal system" also may justify disqualification of defendant's chosen counsel. *Hobson*, 672 F.2d at 828; *see, e.g., United States v. Walton*, 703 F.Supp. 75, 77 (S.D.Fla.1988) (disqualification of defense attorney warranted on strength of codefendant's allegation that attorney was prepared to use false testimony). However,

acts which appear to violate the ABA Code or other accepted standards of legal ethics do not confer upon the trial court unfettered discretion to disqualify the attorney selected by a party.... An attorney may be disqualified only when there is "a reasonable possibility that some specifically identifiable impropriety" actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice.

*Kitchin*, 592 F.2d at 903 (quoting *Woods v. Clovington County Bank*, 537 F.2d 804 (5th Cir.1976)); *United States v. Castellano*, 610 F.Supp. 1137, 1147 (S.D.N.Y.1985). Finally, an attorney's misconduct in open court may sufficiently impede the orderly administration of justice to supersede a defendant's sixth amendment right to retain counsel of his choice. *See United States v. Dinitz*, 538 F.2d 1214, 1220–21 (5th Cir.1976) (en banc) (counsel expelled from courtroom after he ignored the court's instructions not to interject personal opinion into his opening statement and advanced factual allegations lacking evidentiary foundation; no sixth amendment violation); *Ross v. Reda*, 510 F.2d 1172, 1173 (6th Cir.) (denial of attorney's request to proceed *pro hac vice* did not violate defendant's right to counsel of choice where attorney refused to limit out-of-court statements about the case), *cert. denied*,

---

**10.** Defendant argues that, in revoking Dickstein's *pro hac vice* status, the district court failed to follow W.D.Okla.R. 4(J) governing attorney disciplinary procedures. We need not address this argument because defendant lacks standing to argue that Dickstein's rights to procedural due process were violated.

**11.** The district court stated:
The relationship between a court and a regular member of its own bar is in part defined by the system of discipline applied within that bar. An attorney pro hac vice is more a stranger to the court, subject to discipline but not in the same way or in the same extent as a regular member of the court's bar. This is why discretion is afforded over pro hac vice admission, notwithstanding the recognized preference to permit a defendant to be represented by counsel of his choice.
Rec. vol. I, doc 52 at 1–2.

423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975).

When a district court disqualifies defendant's counsel of choice, it must make findings on the record stating the rationale for its action. *Laura,* 607 F.2d at 60. The appropriate standard of review for attorney disqualification depends upon the nature and timing of the district court's determination. A court's factual findings concerning the disqualification of an attorney, particularly findings concerning counsel's motivation and state of mind, are reviewed for clear error. *Nationalist Movement v. City of Cumming,* 913 F.2d 885, 895 (11th Cir.1990). When the offending conduct takes place in open court, the district court must make an immediate decision whether the attorney's continued participation in the case will jeopardize the integrity of the proceeding. A disqualification decision rendered under such circumstances is "so closely linked to the trial judge's responsibility to supervise the conduct of the case before him" that it is "properly reviewed under the abuse of discretion standard." *Norton v. Tallahassee Memorial Hospital,* 700 F.2d 617, 619 (11th Cir.1983); *see, e.g., City of Cumming,* 913 F.2d at 895 (revocation of *pro hac vice* admission for courtroom misconduct reviewed for abuse of discretion); *Dinitz,* 538 F.2d at 1219 (disqualification of defense counsel for making inappropriate remarks to jury reviewed for abuse of discretion). However, "'in disqualification cases ... where the facts are not in dispute, District Courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms.'" *United States v. Snyder,* 707 F.2d 139, 144 (5th Cir.1983) (quoting *Woods,* 537 F.2d at 810); *City of Cumming,* 913 F.2d at 895; *see United States v. Hughes,* 817 F.2d 268, 270 n. 1 (5th Cir.) (disqualification of defense counsel for conflict of interest reviewed for simple error), *cert. denied,* 484 U.S. 858, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987); *Novo Terapeutisk v. Baxter Travenol Laboratories,* 607 F.2d 186, 198 (7th Cir.1979) (same); *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980) (determination of whether attorney's conduct violated ABA disciplinary rule "'leaves little leeway for the exercise of discretion.'") (quoting *American Roller Co. v. Budinger,* 513 F.2d 982, 985 n. 3 (3d Cir.1975)); *but see Gilbert v. City of Little Rock,* 622 F.2d 386, 397 (8th Cir.1980) (disqualification of attorneys for violation of Code of Professional Responsibility reviewed for abuse of discretion). Moreover, in cases implicating a criminal defendant's sixth amendment right to counsel "'the abuse of discretion standard is simply too deferential where such a fundamental constitutional right is affected.'" *Snyder,* 707 F.2d at 144 (quoting *Hobson,* 672 F.2d at 827); *City of Cumming,* 913 F.2d at 895 (where disqualification raises sixth amendment questions, district court's decision "subject to careful examination by the appellate court."); *but see United States v. DeFazio,* 899 F.2d 626, 629 (7th Cir.1990) (abuse of discretion standard governs review of defense attorney disqualification).

Here, the district court found that Dickstein's conduct violated Rules 3.1 and 3.3 of the Oklahoma Rules of Professional Conduct and concluded that defendant's sixth amendment right to retain counsel of his choice was outweighed by the public's interest in the fair and orderly administration of justice. The court did not arrive at these conclusions based upon Dickstein's conduct in open court; it disqualified Dickstein on the basis of his pleadings. In analyzing these pleadings against applicable ethical and constitutional standards, the district court enjoyed no functional advantage which would militate against plenary review. We therefore review de novo the district court's revocation of Dickstein's admission *pro hac vice* and his resulting disqualification from further participation in the case.

### D.

Although all ten of the pretrial motions Dickstein filed in the instant case were denied, such denial does not necessarily render those motions frivolous. Many of Dickstein's motions were entirely routine and appropriate, *e.g.,* the discovery motions, the motion for a bill of particulars

and the portion of the suppression motion that sought exclusion of defendant's statements to the IRS. However, merely because several of Dickstein's motions fell within the bounds of acceptable advocacy does not salvage those motions that entirely departed from that standard. We therefore consider Dickstein's motion to dismiss for lack of jurisdiction, his motion to dismiss for violation of the Paperwork Reduction Act, his motion to strike and to suppress results of the third party summons.

### 1. Jurisdiction

Dickstein's motion to dismiss advanced the hackneyed tax protester refrain that federal criminal jurisdiction only extends to the District of Columbia, United States territorial possessions and ceded territories. Dickstein's memorandum blithely ignored 18 U.S.C. § 3231 which explicitly vests federal district courts with jurisdiction over "all offenses against the laws of the United States." Dickstein also conveniently ignored article I, section 8 of the United States Constitution which empowers Congress to create, define and punish crimes, irrespective of where they are committed. *See United States v. Worrall*, 2 U.S. (2 Dall.) 384, 393, 1 L.Ed. 426 (1798) (Chase, J.). Article I, section 8 and the sixteenth amendment also empowers Congress to create and provide for the administration of an income tax; the statute under which defendant was charged and convicted, 26 U.S.C. § 7201, plainly falls within that authority. Efforts to argue that federal jurisdiction does not encompass prosecutions for federal tax evasion have been rejected as either "silly" or "frivolous" by a myriad of courts throughout the nation. *See, e.g., United States v. Dawes*, 874 F.2d 746, 750 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989), *overruled on other grounds*, 895 F.2d 1581 (10th Cir.1990); *United States v. Tedder*, 787 F.2d 540, 542 (10th Cir.1986); *United States v. Amon*, 669 F.2d 1351, 1355 (10th Cir.1981); *United States v. Brown*, 600 F.2d 248, 259 (10th Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979); *Cheek*, 882 F.2d at 1270; *United States v. Ward*, 833 F.2d 1538, 1539 (11th

Cir.1987), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988); *United States v. Koliboski*, 732 F.2d 1328, 1329–30 (7th Cir.1984); *United States v. Evans*, 717 F.2d 1334, 1334 (11th Cir.1983); *United States v. Drefke*, 707 F.2d 978, 981 (8th Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983); *United States v. Spurgeon*, 671 F.2d 1198, 1199 (8th Cir. 1982); *O'Brien v. United States*, 51 F.2d 193, 196 (7th Cir.), *cert. denied*, 284 U.S. 673, 52 S.Ct. 129, 76 L.Ed. 569 (1931). In the face of this uniform authority, it defies credulity to argue that the district court lacked jurisdiction to adjudicate the government's case against defendant.

Dickstein's argument that the sixteenth amendment does not authorize a direct, non-apportioned tax on United States citizens similarly is devoid of any arguable basis in law. Indeed, the Ninth Circuit recently noted "the patent absurdity and frivolity of such a proposition." *In re Becraft*, 885 F.2d 547, 548 (9th Cir.1989). For seventy-five years, the Supreme Court has recognized that the sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves, *see Brushaber v. Union Pac. R.R.*, 240 U.S. 1, 12–19, 36 S.Ct. 236, 239–42, 60 L.Ed. 493 (1916); efforts to argue otherwise have been sanctioned as frivolous, *see, e.g., Becraft*, 885 F.2d at 549 (Fed.R.App.P. 38 sanctions for raising frivolous sixteenth amendment argument in petition for rehearing); *Lovell v. United States*, 755 F.2d 517, 519–20 (7th Cir.1984) (Fed.R.App.P. 38 sanctions imposed on pro se litigants raising frivolous sixteenth amendment contentions). Dickstein's contention that defendant was not an "individual" under the Internal Revenue Code also is frivolous. *See Dawes*, 874 F.2d at 750–51; *United States v. Studley*, 783 F.2d 934, 937 (9th Cir.1986); *United States v. Rice*, 659 F.2d 524, 528 (5th Cir. Unit A 1981). And his disregard of governing legal precedent is further portrayed by his reference to the "alleged ratification" of the sixteenth amendment in the face of uniform contrary authority. *See, e.g., Miller v. United*

*States,* 868 F.2d 236, 241 (7th Cir.1989); *United States v. Sitka,* 845 F.2d 43, 46–47 (2d Cir.), *cert. denied,* 488 U.S. 827, 109 S.Ct. 77, 102 L.Ed.2d 54 (1988); *United States v. Stahl,* 792 F.2d 1438, 1440–41 (9th Cir.1986), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 840 (1987); *Sisk v. Commissioner,* 791 F.2d 58, 60–61 (6th Cir. 1986); *see generally United States v. Stillhammer,* 706 F.2d 1072, 1077–78 (10th Cir. 1983). Argument reflecting such contemptuous disregard for established legal authority has no place within this circuit.

### 2. Paperwork Reduction Act

The Paperwork Reduction Act, 44 U.S.C. §§ 3501–20, requires that federal agencies submit all "information collection requests" to the Director of the Office of Management and Budget (OMB) for review, 44 U.S.C. § 3507. "Typical information collection requests include tax forms,[12] medicare forms, financial loan applications, job applications, questionnaires, compliance reports and tax or business records." *Dole v. United Steelworkers,* — U.S. —, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990). Once the OMB director approves the information collection requests, he must assign it a control number. 44 U.S.C. § 3504. An agency shall not conduct or sponsor the collection of information unless the information collection request has been submitted to and approved by the Director, 44 U.S.C. § 3507(a), and shall not engage in a collection of information without obtaining from the Director a control number to be displayed upon the information collection request, 44 U.S.C. § 3507(f). Moreover,

no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter.

44 U.S.C. § 3512. *See, e.g., United States v. Smith,* 866 F.2d 1092, 1098–99 (9th Cir. 1989) (prosecution for failure to file a Plan of Operations with the Forest Service barred under § 3512 of the Act because the filing requirement was imposed pursuant to an information collection request which lacked an OMB control number).

Dickstein did not contend that the W–4 forms at issue in the case violated the Paperwork Reduction Act. He further conceded that the IRS 1040 forms at issue all contained OMB control numbers.[13] He ar-

---

**12.** In *United States v. Tedder,* 787 F.2d 540, 542 (10th Cir.1986), this court held that tax forms were not information collection requests subject to the Paperwork Reduction Act because the filing of income tax returns was obligatory. This holding is superseded by the Supreme Court's analysis in *Dole v. United Steelworkers,* — U.S. —, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990), which included federal income tax forms within the category of information collection requests under the Act. *Dole* would also appear to call into question the holdings in *Snyder v. IRS,* 596 F.Supp. 240 (N.D.Ind.1984) and *Cameron v. IRS,* 593 F.Supp. 1540 (N.D.Ind. 1984), *aff'd,* 773 F.2d 126 (7th Cir.1985), both of which held the Paperwork Reduction Act inapplicable to IRS forms. However, *Dole* does not contravene our recent holding in *Lonsdale v. United States,* 919 F.2d 1440, 1444 (10th Cir. 1990) that IRS summonses do not constitute information requests under the Act because they are issued in the course of an investigation directed against a specific individual or entity. *See* 44 U.S.C. § 3518(c)(1)(B)(ii).

**13.** In *United States v. Weiss,* 914 F.2d 1514, 1520–22 (2d Cir.1990), the Second Circuit held that the Paperwork Reduction Act did not preclude prosecution for filing false medicare and Medicaid claims, despite the fact that the forms in question did not contain OMB control numbers. Distinguishing *Smith,* where defendants were prosecuted for failure to file a Plan of Operations with the Forest Service, the Second Circuit reasoned that the Act " 'only protects a person from penalties for *failing* to file information. It does not protect one who files information which is false.' " Id. at 1522 (quoting Funk, *The Paperwork Reduction Act: Paperwork Reduction Meets Administrative Law,* 24 Harv.J. on Legis. 1, 77 n. 411 (1987)) (emphasis in original). We recognize that because defendant was charged with tax evasion and not failure to file tax returns, he technically was not being prosecuted for failure to provide information. Had defendant's tax evasion been effectuated through the filing of falsified tax returns, *Weiss* would dictate that no Paperwork Reduction Defense would be available to him. But because the provision of information in 1040 forms is inexorably linked to the statutory requirement to pay taxes, and defendant failed to file such forms, the Paperwork Reduction Act was applicable to such conduct.

gued, however, that because the forms did not contain expiration dates, they did not comply with the Act. While acknowledging that there is no explicit requirement in the statute that information collection requests contain expiration dates, Dickstein pointed to oblique language in the legislative history of the Act suggesting that expiration dates are required. *See* S.Rep. No. 96–930, 96th Cong. 2d Sess. (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 6241, 6242. We agree with the district court that this isolated language in the Senate Report does not outweigh plain statutory language indicating that expiration dates are not required along with an OMB control number. However we cannot say that Dickstein lacked an arguable legal basis to argue to the contrary. *See Lonsdale v. United States*, 919 F.2d 1440, 1447 (10th Cir.1990) (coverage of Paperwork Reduction Act is not sufficiently well-settled to warrant sanctions for frivolous appeal). On the other hand, the IRS 1040 forms at issue in the present case were explicitly designated as either "1982," "1983," or "1984" tax returns with their effective dates of coverage clearly denoted.[14] *See* rec. vol. IX, doc. 25. Assuming, *arguendo*, that the Paperwork Reduction Act mandates that all federal forms contain expiration dates, this requirement plainly would be satisfied by the dates provided on the 1040 forms at issue. Dickstein thus lacked any arguable basis in fact or law to argue that the noncompliance of the 1040 forms which defendant failed to file did not comply with the Paperwork Reduction Act: his argument is legally frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) (defining legal frivolousness).

### 3. Motion to Strike

■ Federal Rule of Criminal Procedure 7(d) empowers district courts to "strike surplusage from the indictment or information." Acting in its discretion, a district court may strike as surplusage allegations not relevant to the charge at issue and inflammatory and prejudicial to the defendant. *United States v. Figueroa*, 900 F.2d 1211, 1218 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3228, 110 L.Ed.2d 675 (1990); *United States v. Ramirez*, 710 F.2d 535, 544 (9th Cir.1983); *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975); 1 C. Wright, *Federal Practice and Procedure: Criminal*, § 127 at 426 (2d ed. 1982); *see generally Bary v. United States*, 292 F.2d 53, 55–56 (10th Cir.1961) (in Smith Act prosecution, court properly withdrew from consideration portion of indictment making reference to the Communist Party). However, language in the indictment or information describing the essential elements of the crime alleged is not surplusage and cannot be stricken under Rule 7(d). Wright § 127 at 426; *see Callanan v. United States*, 881 F.2d 229, 236 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990); *United States v. Behenna*, 552 F.2d 573, 576 n. 5 (4th Cir.1977).

■ Dickstein filed a motion pursuant to Rule 7(d) to strike as surplusage language in the indictment alleging that defendant failed to pay income taxes. *See* rec. vol. IX, doc. 24. The elements of tax evasion are: 1) willfulness, 2) existence of a tax deficiency and 3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Samara*, 643 F.2d 701, 703 (10th Cir.), *cert. denied*, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981). Defendant's failure to pay or withhold taxes is an allegation necessary for the establishment of a tax deficiency, an essential element of the offense of tax evasion. At best, Dickstein's motion to strike one of the prima facia elements from the indictment constituted gross ignorance. Under this scenario, the district

---

**14.** For example, the 1982 1040 form submitted in support of Dickstein's motion to dismiss read: "1040 U.S. Individual Income Tax Return 1982 For the year January 1–December 31, 1982 or other year beginning _____, 1982, ending _____, 19___." *See* rec. vol. IX, doc. 25. The 1983 and 1984 1040 forms followed the same format.

court properly could conclude that Dickstein was unable to provide defendant with competent representation. Just as the court in *Campbell* found that defendant could not receive competent representation from a lawyer who had not tried a case in twenty-five years and knew nothing about defendant's case, 874 F.2d at 848–49, so too could the district court below conclude that a defendant charged with tax evasion would not receive effective assistance of counsel from an attorney who did not know that failure to pay taxes was an element of the crime. Conversely, if Dickstein knew that failure to pay taxes was an essential element of tax evasion and nevertheless moved to strike such allegations as surplusage, his motion constituted a material misrepresentation of the law.

### 4. Motion to Suppress Third Party Summons

Dickstein filed a motion on defendant's behalf seeking suppression of all evidence obtained by a third-party summons issued by an IRS Special Agent to the First National Bank of Guthrie, Oklahoma. Dickstein argued that such a summons required authorization of an IRS Group Manager; because it was issued by a Special Agent, the summons was invalid. He relied upon IRS Delegation Order No. 4 (Rev. 15), 49 Fed.Reg. 13,946 (1984), which restricted the issuance of summonses in criminal investigations to Assistant Division Chiefs, Branch Chiefs and Group Managers. The district court rejected Dickstein's argument, pointing out that the cited regulation had been superseded by a new regulation which added Special Agents to the category of IRS officials authorized to issue third-party summonses. *See* Delegation Order No. 4 (Rev. 17), IR Manual 1229 (May 12, 1986); *Hatcher v. United States*, 733 F.Supp. 218, 220–21 (M.D.Pa.1990) (IRS Special Agents have authority to issue third-party summonses).

Standing alone, the inadvertent citation to superseded authority, while professionally wanting, does not constitute misconduct warranting disqualification. However, prior to his involvement in this case, Dickstein advanced the same argument concerning the third-party summons while defending a similar tax evasion case in the Western District of Kentucky. *See* rec. vol. X, doc 51, ex. G. The government's response to Dickstein's suppression motion in the prior case explicitly pointed out that the delegation order on which Dickstein relied had been superseded by subsequent authority. *Id.*, ex. H. Thus, in the instant case, Dickstein directed the court's attention to legal authority with constructive knowledge that such authority had been superseded. As discussed below, the failure to disclose known dispositive contrary authority precluded Dickstein from providing competent and ethical representation to defendant.

### D.

District courts retain the discretion to adopt local rules necessary for the conduct of their business. *Frazier v. Heebe*, 482 U.S. 641, 645, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987); 28 U.S.C. § 1654. The federal district court for the Western District of Oklahoma has adopted the Oklahoma Rules of Professional Conduct as the ethical guidelines governing its practitioners. *See* W.D.Okla.R. 4(J)(4)(b). Rule 3.3(a)(3) of the Oklahoma Rules of Professional Conduct requires attorneys to disclose contrary authority to the court when advancing a legal argument.[15] Okla.Stat. Ann. tit. 5, ch. 1, app. 3–A (Supp.1990); *see City of Oklahoma City v. Oklahoma Tax Comm'n*, 789 P.2d 1287, 1298–99 (Okla. 1990) (Opala, J., dissenting). Dickstein violated Rule 3.3 by misrepresenting to the court the law of federal criminal jurisdiction in flagrant disregard for controlling

---

**15.** The Comment to Rule 3.3 explains:
Legal argument based upon a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities.... The underlying concept is that legal argument is a discussion seeking to determine the legal premises proper applicable to the case.
Okla.Stat.Ann. tit. 5, ch. 1, app. 3–A (Supp.1990).

constitutional, statutory, and regulatory authority. He did not advance a good faith argument why two hundred years of federalist jurisprudence should be abandoned; rather, he sought to indulge the court in the fantasy that the arguments he was advancing actually comprised the law of the land. Dickstein also violated Rule 3.3 by citing legal authority concerning third party IRS summonses with constructive knowledge that such authority had been superseded. In addition, Dickstein's motion to strike language from the indictment detailing the essential elements of the charged offense constituted a material misrepresentation of governing legal principles. Such brazen subversion of legal argument has no place in the courts of this circuit.

Rule 3.3 of the Oklahoma Rules of Professional Conduct provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding ... may nevertheless so defend the proceeding as to require that every element of the case be established.

Okla.Stat.Ann. tit. 5, ch. 1, app. 3–A (Supp. 1990). Under Rule 3.3, a frivolous action is one where "the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action...." *Id., comment.* Dickstein's motion to dismiss for violation of the Paperwork Reduction Act was utterly lacking in any arguable basis in law or fact as was his contention that defendant was not an "individual" under the Internal Revenue Code. The only possible purpose behind these motions was to harass the prosecu-

tion and the court. Dickstein therefore violated Rule 3.1 by advancing a frivolous argument before the district court.

■ In evaluating the merits of Dickstein's pleadings, we remain mindful that defense attorneys must, of necessity advance unpopular arguments in the course of fulfilling their ethical obligation to zealously represent their client's interests. *See* Oklahoma Rule of Professional Conduct 3.1, Okla.Stat.Ann. tit. 5, ch. 1, app. 3–A (Supp.1990).[16] However, the sixth amendment does not encompass a defendant's effort to transform judicial proceedings into a forum for the advancement of political, economic or social views and the obfuscation of the legal and factual questions at issue. A criminal trial is, first and foremost, a vehicle for the structured discovery of truth. Advocacy which contravenes the truth-seeking function of the criminal trial and deliberately misrepresents the legal authority governing the proceeding has no place in a court of law. *See Lonsdale*, 919 F.2d at 1447–48 (imposing sanctions on pro se litigants advancing frivolous arguments concerning inapplicability of tax laws); *Casper v. Commissioner*, 805 F.2d 902, 905 (10th Cir., 1986) (same); *Miller*, 868 F.2d at 241–42 (same). By advancing arguments "not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law," *Casper*, 805 F.2d at 905, Dickstein transformed legal argument from an intellectual process aimed at the derivation of the correct legal principle to a carnival of frivolity aimed at disseminating defendant's political views. When combined with Dickstein's past reputation for hijacking judicial proceedings onto his tax protester bandwagon, the district court legitimately concluded that Dickstein's disregard for governing ethical principles would continue throughout the case, robbing the trial of its elementary truth-seeking purpose and depriving

---

**16.** The comment to Oklahoma Rule of Professional Conduct Rule 1.3 provides in part:
A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. Okla.Stat.Ann. tit. 5, ch. 1, app. 3–A (Supp.1990).

**634**

defendant of the effective assistance of counsel.

"Those who use the tools of the legal profession to prostitute its high standards of ethical and moral conduct serve only to destroy the admirable goals and aims of our criminal justice system." *United States v. Blitstein,* 626 F.2d 774, 781 (10th Cir.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). While the power to disqualify an attorney from a case "is one which ought to be exercised with great caution," it is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex Parte Burr,* 22 U.S. (9 Wheat) 529, 529–30, 6 L.Ed. 152 (1824) (Marshall, C.J.). In this case, the district court correctly balanced defendant's right to retain counsel of his choice against society's need for the orderly administration of justice and the ethical practice of law. We hold that the court acted properly to maintain the integrity of the proceeding by discharging defendant's counsel of choice from further participation in the case.

AFFIRMED.