**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ABRAHAM HAGOS,

        Petitioner - Appellant,

v.

ROGER WERHOLTZ, Interim Executive
Director, Colorado Department of
Corrections; JAMES FALK, Warden,
Sterling Correction Facility; JOHN
SUTHERS, Attorney General of the State
of Colorado,

        Respondents – Appellees.

No. 13-1124
(D.C. No. 1:12-CV-00678-REB)
(D. Colo.)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Abraham Hagos, a Colorado state prisoner proceeding in forma pauperis, wants to

appeal from the denial of his 28 U.S.C. § 2254 habeas petition.[1] The district court also

denied a Certificate of Appealability (COA). Because Hagos has not "made a substantial

---

[1] Hagos is not pro se; he had counsel representing him in the district court and
counsel continues to represent him on appeal.

showing of the denial of a constitutional right," *see* 28 U.S.C. § 2253(c)(2), we too deny a COA.

This case involves a "murder for hire" scheme. A search of an apartment leased by Jimmy Roberts revealed drugs, a large amount of cash, and a 9-millimeter semi-automatic pistol. Roberts told the police the money, gun, and most of the drugs found at the apartment belonged to Hagos. The state of Colorado brought felony drug charges against Hagos; Roberts testified against Hagos at the preliminary hearing. Hagos decided Roberts had to be killed. With the assistance of Matt Conner, Hagos hired Kosal So to kill Roberts for $20,000—$10,000 to be paid up-front with the remaining $10,000 to be paid after Roberts was killed. Hagos paid So $10,000 and provided him a gun to be used to kill Roberts. So hired Samnang Prim and Phetsomphone Chanthaphom (Ley) to help him.

Prim and Ley's initial attempt to kill Roberts was unsuccessful. Three days later, however, Prim shot and killed Roberts. Hagos paid So the remaining $10,000, half of which So paid to Prim. Conner and So eventually admitted their parts in the murder and agreed to testify against Hagos. Prim also confessed to his involvement in the scheme.

Hagos was charged with first degree murder, attempted murder, conspiracy to commit first degree murder and two counts of witness retaliation. He was appointed counsel from the Office of State Public Defender (PD) but the PD was eventually

disqualified due to a conflict of interest.[2] New counsel was appointed. After the trial

court decided to admit some of the evidence from the search of Robert's apartment as *res*

*gestae*,[3] Hagos filed a motion to suppress the evidence; he claimed the affidavit

submitted by the police in support of the warrant was insufficient to establish probable

cause to search. The trial court denied the motion without conducting an evidentiary

hearing and ruled the drug, money, and gun evidence was admissible *res gestae* evidence,

i.e., it provided context as to why Hagos wanted Roberts killed—to prevent him from

testifying in the drug case against Hagos. At trial, Prim asserted his Fifth Amendment

right not to testify. Over Hagos's objection, Prim's confession was admitted through the

testimony of one of the detectives who took the confession. The jury found Hagos guilty

of all charges. He was sentenced to life imprisonment without parole.

---

[2] During pretrial proceedings, the PD learned the State had a witness who proposed to testify about Hagos's jailhouse confession to him. The PD interviewed the witness's wife to determine whether she could impeach him. The wife alleged the PD had threatened her during the interview. While the PD denied the accusations, the trial court determined the PD had created a conflict of interest—if the State called the witness to testify and Hagos called the wife to impeach him, then the State could cross-examine the wife concerning her motivations for testifying, including that she was allegedly threatened by the PD. If so, Hagos would want to call the PD as a witness to rebut her testimony. Because Hagos refused to waive his right to call the wife, the trial court disqualified the PD.

[3] "An uncharged act is admissible as *res gestae* . . . if it was inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act. Evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof of the offense charged in the indictment." *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (citations and quotations omitted).

Hagos appealed. Relevant here, he argued: (1) his Sixth Amendment right to confrontation was violated by admitting Prim's confession; (2) his motion to suppress should have been granted; and (3) the PD should not have been disqualified from representing him. He also argued the cumulative effect of the trial errors deprived him of a fair trial.

The Colorado Court of Appeals rejected Hagos' arguments. *See People v. Hagos*, 250 P.3d 596 (Colo. App. 2009). First, based on the State's concession it assumed Prim's confession was improperly admitted in violation of the Sixth Amendment Confrontation Clause. *Id.* at 621. It decided, however, the error was harmless because the detective's testimony summarizing Prim's confession was cumulative to the testimony of one of Prim's fellow gang members, Srey Mony, who testified Prim told him he shot Roberts. *Id.* at 621, 624. And Mony's testimony was, in turn, corroborated by "the extensive and detailed" testimony of So. *Id.* at 621. It also noted Prim's confession had not implicated Hagos because Prim had been solicited and paid by So and had no personal contact with Hagos. *Id.* Second, while it had "significant doubt" whether the affidavit supporting the search warrant for Roberts's apartment established the crucial link between the illegal activity and the apartment to be searched, as required to establish probable cause under Colorado law, it nevertheless concluded the evidence was admissible under the good faith exception to the exclusionary rule. *Id.* at 618. Third, it decided there was no abuse of discretion in disqualifying counsel. *Id.* at 608-11. It said an indigent defendant, like Hagos, does not have a Sixth Amendment right to counsel of his choice. *Id.* at 608. However, under Colorado law, a defendant is entitled to continued and effective

representation by court-appointed counsel unless there is basis for termination such as a conflict or a potential for conflict. *Id.* It decided the trial court had properly determined there was a potential for conflict in that the PD could have been called as a witness by Hagos. *Id.* at 609-10. Finally, it rejected Hagos's cumulative error argument. *Id.* at 625. The Colorado Supreme Court and the United States Supreme Court denied certiorari review. *See Hagos v. Colo.*, 131 S. Ct. 1701 (2011); *Hagos v. People*, No. 10SC192, 2010 WL 3529276 (Colo. Sept. 13, 2010).

Dissatisfied, Hagos filed this § 2254 petition presenting the same arguments raised in his direct appeal. The judge denied relief. He determined that while Hagos's confrontation rights may have been violated, any violation was harmless under the factors set forth in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986),[4] namely, (1) So and Connor's testimony was the critical evidence against Hagos because they testified to their interactions with Hagos, explained why Hagos wanted Roberts killed, and discussed their roles in carrying out Hagos's directives to kill Roberts; while Prim pulled the trigger, he had no contact with Hagos; (2) Prim's confession was cumulative of inculpatory statements made by Prim and introduced through So and Mony; (3) there was plentiful evidence corroborating Prim's confession, including Hagos's own admissions as testified to by a number of witnesses; and (4) Prim's confession did not have a substantial and

---

[4] Those factors are: (1) "the importance of the witness'[s] testimony in the prosecution's case"; (2) "whether the testimony was cumulative"; (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points"; (4) "the extent of actual cross-examination"; and (5) "the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

injurious effect on the outcome of the trial because "[e]vidence that Hagos threatened Roberts'[s] life [was] abundant in the record and so [was] the evidence that he facilitated and paid for his murder." (R. Vol. 1 at 626.)

As to the admissibility of the evidence obtained from the search of Roberts's apartment, the judge determined the state trial court viewed Hagos's claim not as one arising under the Fourth Amendment but rather as one of the admissibility of evidence—a state law issue not cognizable under § 2254 unless the evidentiary rulings rendered the trial so unfair as to constitute a denial of a constitutional right. *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001). The judge concluded the admission of the evidence as *res gestae* was reasonable because it was linked in time and circumstances with the charged crimes and was necessary for a full and complete understanding of the events surrounding Roberts's murder. Nevertheless, viewing the claim as one arising under the Fourth Amendment and assuming (1) Hagos had not been afforded a full and fair hearing in state court on the claim,[5] and (2) the affidavit did not establish probable cause, the judge decided the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984) applied because the affidavit was neither bare bones nor devoid of facts rendering an officer's reliance on it unreasonable.

---

[5] *See Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

With regard to the disqualification of counsel, the judge determined Hagos had failed to identify any clearly established federal law violated by the state court—the cases he cited merely held a defendant's waiver of his right to counsel and election to proceed pro se must be knowing and voluntary. But there was no waiver; Hagos refused to waive a conflict and the trial court disqualified his counsel of choice and appointed new counsel. Even assuming, *arguendo*, Hagos had a constitutional right to counsel of his choice, the judge said the trial court's decision to disqualify the PD due to a potential conflict was neither arbitrary nor unreasonable. *See Wheat v. United States*, 486 U.S. 153, 159 (1988) (stating "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."); *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990) (stating "a defendant's right to retain counsel of his choice is not absolute and may not be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.") (quotations omitted).

Finally, the judge rejected Hagos's cumulative error claim.

A COA is a jurisdictional prerequisite to our review of a petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

- 7 -

adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). In evaluating whether an applicant has satisfied this burden, we undertake "a preliminary, though not definitive, consideration of the [legal] framework" applicable to each of his claims. *Miller-El*, 537 U.S. at 338.

In a cogent order the district judge thoroughly and correctly addressed and resolved the issues raised by Hagos. As no jurist of reason could reasonably debate the correctness of the district court's decision, we **DENY** the request for a COA and **DISMISS** this matter. Hagos's motion to supplement and correct the state court record is **DENIED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge