**UNITED STATES of America, Plaintiff,**

**v.**

**Albert Ervin HOWELL, Defendant.**

**No. 96–40027–01–SAC.**

United States District Court,
D. Kansas.

June 18, 1996.

Robert E. Tilton, Tilton & Hoffman, Topeka, KS, Albert Ervin Howell, Coffeyville, KS, Jeffrey A. Dickstein, Tulsa, OK, for defendant.

James E. Flory, Office of United States Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court upon the government's "Motion for reconsideration of

admission pro hac vice of Jeffrey A. Dickstein" (Dk. 14). In its motion, the government indicates that prior to Albert Ervin Howell's arraignment, the magistrate judge granted Bob Tilton's,[1] a member in good standing with this bar, "Motion to allow attorney Jeffrey A. Dickstein to appear Pro Hac Vice on Behalf of the Defendant" (Dk. 9). The government was not served with a copy of the motion prior to or during the hearing. Consequently, the government was not prepared to offer any response to the motion.

In its motion, the government contends that Dickstein averred that he "is a member in good standing in all bars of which he is a member" but failed to disclose that his admission *pro hac vice* had been litigated and/or revoked by federal courts in both the Ninth and Tenth Circuit, and further that a formal censure was imposed by a United States Judge for the Western District of Washington.

On May 21, 1996, Dickstein filed a reply to the government's motion for reconsideration. Dickstein indicates that the formal censure in *United States v. Summet*, 862 F.2d 784 (9th Cir.1988), occurred over seven years ago. The other cases cited by the government, *United States v. Collins*, 920 F.2d 619 (10th Cir.1990) and *United States v. Holland*, No. 94–5234, 1995 WL 539589 (10th Cir. Sept. 11, 1995) occurred over six years ago. Dickstein indicates that he is still trying to clear his name in those cases. In regard to the *Collins* case, Dickstein indicates that he never received a hearing on the merits in Federal court and that the "issue is now being prepared for certiorari to the United States Supreme Court." Dickstein indicates that the State Bar of California dismissed all allegations against him. Dickstein assures the court that he understands his ethical obligations. Dickstein also submitted a transcript, which he describes as follows: "wherein District Court Judge James C. Paine, Southern District of Florida, who after being advised of the continuous attacks on Dickstein's reputation by the Department of Justice, offered to give any Court a favorable recommendation upon inquiry."

On April 30, 1996, the magistrate judge set a time for this court to hear pretrial motions on June 7, 1996, at 3:00 p.m. On May 3, 1996, the clerk of the court sent written notice again giving notice that the pretrial motions hearing was going to be held on June 7, 1996, at 3:00 p.m. At 3:00 p.m. on June 7, 1996, neither Dickstein nor his client appeared as scheduled. The court's deputy clerk called Dickstein's office, but no one answered. A message was left on the answering machine.[2] However, Donald Hoffman, local counsel did appear and upon agreement of counsel, the pending motions were submitted on the written briefs.[3]

## Admission Pro Hac Vice

**D.Kan.Rule 83.5.4, APPEARANCE FOR A PARTICULAR CASE,** provides in pertinent part:

(a) Subject to the provisions of 28 U.S.C. §§ 515, 517, and other similar provisions of the United States Code, persons not admitted to practice in this court who are members in good standing of the bar of another state or of the bar of another federal court may, upon motion made by a member of the bar of this court in good standing, be admitted for the purposes of a particular case only, subject to the following conditions:

---

1. Apparently Donald Hoffman was intended to be Dickstein's local counsel. However, as Hoffman was unable to appear on April 30, 1996, Tilton stood in his place.

2. Dickstein returned the telephone message left on his answering machine. Dickstein indicated to the court's deputy clerk that it was his belief that the June 7, 1996, hearing had been continued.

   So that the record is clear, no notice from the court indicated that the matter had been continued as it in fact was not. In fact, Donald Hoffman, on behalf of the defendant, filed a reply to the government's response to his pretrial motions on June 7, 1996, at 2:28 p.m, shortly before the 3:00 p.m. hearing was to commence. The reply was apparently drafted by Dickstein but was signed by both Hoffman and Dickstein. Hoffman indicated that he filed the reply that afternoon so that the court could consider it before the scheduled hearing.

3. The government was, however, required to submit an affidavit to resolve two factual issues raised by the defendant's motion for disclosure pursuant to 26 U.S.C. § 6103(h)(5).

(1) The motion shall be in writing; and

(2) the motion shall be accompanied by an affidavit signed by the visiting lawyer which shall include:

(A) The full name of the affiant;

(B) the address and telephone numbers of the affiant;

(C) the name of the firm or letterhead under which the affiant practices;

(D) the dates and places of admission to all bars, state or federal, and registration numbers, if any; and

(E) a recitation that the affiant is in good standing in all bars of which he or she is a member and that no disciplinary or grievance proceedings have been filed or are pending (if disciplinary proceedings have been filed, the court, case name, docket number and disposition shall be set forth).

The motion and affidavit shall be accompanied by payment of a registration fee in the sum of $10.00. If an attorney has paid the registration fee for an appearance pro hac vice, no other pro hac vice registration fee shall be required to be paid by that attorney during the same calendar year....

(b) An attorney admitted pro hac vice who, while practicing in this court under such admission, is charged in any court of the United States or of any state, territory or possession of the United States with the commission of a felony or with unprofessional conduct, shall notify the clerk in writing within ten (10) days after service of process or notice to him or her of such charge.

(c) All pleadings or other papers signed by an attorney admitted pro hac vice shall also be signed by a member of the bar of this court in good standing who shall participate meaningfully in the preparation and trial of the case or proceedings to the extent required by the court. An attorney who applies for admission pro hac vice by doing so consents to the exercise of disciplinary jurisdiction by this court over any alleged misconduct that occurs during the progress of the case in which the attorney so admitted participates.

. . .

(e) **Preclusion from Practice.** An attorney who has been permitted to appear pursuant to this rule who is found guilty of a serious crime or is publicly disciplined by another court may be precluded from continuing that special appearance and from appearing at the bar of this court in any other case.

### Facts

On April 30, 1996, Bob Tilton, a member of this bar in good standing, filed a "Motion to allow attorney Jeffrey A. Dickstein to appear Pro Hac Vice on Behalf of the Defendant" (Dk. 9). Attached to the motion was an affidavit of Jeffrey A. Dickstein. In that affidavit, Dickstein indicates that he is admitted to practice by the Supreme Court of California. Dickstein also indicates that he is admitted to practice in several federal courts including the Tenth Circuit. Dickstein states that he "is a member in good standing in all bars of which he is a member. No disciplinary or grievance proceedings are pending."

Dickstein's affidavit lists two disciplinary proceedings initiated by the State Bar of California: Case No. 91–0–00922; Case No. 92–J–10797. Dickstein's affidavit states that both cases were dismissed prior to trial.

Prior to granting Tilton's motion to admit Dickstein *pro hac vice*, the magistrate judge asked Dickstein several questions about the two disciplinary proceedings listed in his affidavit. The following is an excerpt of the relevant portion of that inquiry:

*Magistrate Judge Newman:* I note that there was, there were proceedings against you in California. What was the subject matter of those proceedings?

*Dickstein:* The subject matter was two judges took offense at some of the pleadings I filed.

*Magistrate Judge Newman:* What was the nature of those allegations?

*Dickstein:* Against Me?

*Magistrate Judge Newman:* Uh huh.

*Dickstein:* That my pleadings were frivolous.

*Magistrate Judge Newman:* Were those in criminal proceedings?

*Dickstein:* Yes.

*Magistrate Judge Newman:* And those matters are totally resolved now?

*Dickstein:* Yes, Your Honor. State bar dismissed before trial.

*Magistrate Judge Newman:* Were those matters taken up in any appellate cases?

*Dickstein:* Not out of the state bar, but yes.

*Magistrate Judge Newman:* Were the question (sic) of frivolousness of pleadings taken up within the cases in which they were filed?

*Dickstein:* Yes. Not by me, but yes.

*Magistrate Judge Newman:* Were sanctions imposed?

*Dickstein:* No, sir.

*Magistrate Judge Newman:* Was a finding in your favor made in those cases ultimately?

*Dickstein:* In the one case, I wasn't a party to the proceeding, so, and the court ruled that the defendant didn't have standing to raise the issue with respect to me. So there really wasn't a finding with respect to me, other than to uphold the judge's finding that the pleadings were frivolous as grounds to revoke my permission to appear pro hac vice. That judge presented the matter to the state bar and the state bar thought otherwise and dismissed the charges.

*Magistrate Judge Newman:* But, there was no appeal from that judge's decision to an appellate court?

*Dickstein:* Not by me. By the defendant.

*Magistrate Judge Newman:* And found that he didn't have a right to appeal that issue?

*Dickstein:* Yes. I've been trying for six years to get an appeal and I'm now in front of the Supreme Court on that issue.

*Magistrate Judge Newman:* On the, in the other case, was that matter resolved within the litigated case.

*Dickstein:* Again, if permission to appear pro hac vice was revoked after we hung the jury during the first trial—I appealed that decision on the grounds that juror affidavits indicated I didn't engage in the conduct and the district court refused to consider those affidavits charging me with illegally contacting jurors, which I did not, and I appealed that,

and the court of appeals refused to address that issue.

*Magistrate Judge Newman:* Alright.

*Dickstein:* I do have, your honor, a transcript of a trial I concluded in the Southern District of Florida where Judge Paine indicated he would be more than happy to talk to the court about my professional conduct before him in the trial that concluded in November of '95, if the court does have some question of—I would sincerely ask the court to contact Judge Paine.

*Magistrate Judge Newman:* Well, I'm going to provisionally admit you, and when I say provisionally that means that I'm going to admit you to participate in these proceedings, but this court will not tolerate the filing of frivolous pleadings. And, pro hac vice admission is a privilege not a right and consequently should the court find that there is that kind of conduct this court will take swift action and withdraw its admission.

*Dickstein:* I do not file frivolous pleadings, Your Honor.

*Magistrate Judge Newman:* I understand that is your position and I'm not suggesting that you do. I'm just putting you on fair notice that pro hac vice admission is a privilege and it can be withdrawn.

*Dickstein:* I appreciate the court letting me come in.

Based upon the affidavit and responses provided by Dickstein, the magistrate judge admitted Dickstein *pro hac vice.*

### Chronology of Dickstein's Reported Difficulties Adhering to the Rules of Professional Conduct

The following is a summary of the reported cases discussing Dickstein's transgressions of the rules of professional conduct: *United States v. Summet,* 862 F.2d 784 (9th Cir.1988).

In *Summet,* Dickstein was admitted to practice in that court *pro hac vice* in the Western District of Washington. Following the trial in which the defendant was convicted, the district court in the Western District of Washington found Dickstein's acts during trial contemptuous and formally censured

him. Dickstein's *pro hac vice* status was revoked.

The following is an excerpt from the court of appeals opinion describing Dickstein's conduct:

> The trial was less than placid. The following is a modest sampling of statements made by Dickstein to the district judge during the trial:
>
> > Judge, then you best throw me out because what I'm going to do is defend this man to the best of my ability. I don't know, Sir, where the Court gets off thinking they can control who he has as his attorney when the Constitution says he has a right to counsel of choice. May I please finish my sentence before you interrupt, your Honor? I'll attempt to do the same for you. We can't tolerate this lack of [sic] abuse of the Court. This trial is a mockery, your Honor, and I object strenuously for the record. I'd be pleased to stand up for the law, not for this Court though. I'd like to represent him [defendant] according to the law, unfortunately that's not present in this courtroom. I'm not finished. Are you cutting me off again, your Honor? . . . and I'll walk around this Court in my normal style to present this case. I'm sorry if I'm offensive to you.' What we do know is that your Honor appears to be assisting the prosecution by assuming what his objections are. I really dislike the self-serving statements of the Court. Then perhaps the Court is hard of hearing. . . . I was, your Honor, you just cut me off. . . . Are we playing a game here, Sir?

In addition, the following are some of the statements made by Dickstein in the presence of the jury:

> I will not sit here and be quiet while you prejudice this jury to not give my client a trial by jury. This is a sham, your Honor. I won't participate in this any longer.

> Moreover, the following statements were made by Dickstein to the jury: I don't know if we are going to be able to put on a defense here or not, ladies and gentlemen. Every issue the defendant has tried to put in front of this case, the authority on the law says you don't need to know what that is. If you were on trial, ladies and gentlemen, is the way this trial was run the way that you would want your trial run?

> The district judge advised Dickstein on at least five occasions that failure to follow the rules would result in his exclusion from the court. The judge further advised him once that his "actions border on contentious behavior." Nevertheless, Dickstein was not held in contempt during the trial.

862 F.2d at 785.

Dickstein appealed the district court's censure to court of appeals, which affirmed the censure sanction.

*United States v. Collins,* 920 F.2d 619 (10th Cir.1990), *cert. denied,* 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991).[4]

Dickstein was retained by Collins, who is charged with tax evasion. Dickstein was admitted *pro hac vice* in the Western District of Oklahoma. Based upon the frivolous nature of the written motions filed by Dickstein,[5] the district court revoked Dick-

---

4. In *Collins,* the Tenth Circuit notes that based upon Dickstein's conduct in *Summet,* the Nevada federal district court denied his application for admission *pro hac vice* in *Nutter v. United States,* No. CV–88–17–PMB. "Following the court's denial, Dickstein remained in the courtroom and continued to disrupt the proceedings, disregarding the court's frequent admonitions that he remain silent. After repeated outbursts, the district court was obliged to order Dickstein removed from the courtroom by a United States marshal." 920 F.2d at 623 n. 2.

5. In describing Dickstein's filings, the district court stated:

The pleadings filed by Attorney Dickstein in this case signal the Court that permitting his future participation will obscure the issues, engulf the case with frivolity, and deflect the proceedings from their object—the orderly determination whether defendant has broken the law or not. Just as a court need not suffer the testimony of a purported expert witness that the moon is made of green cheese, it need not suffer the serving-up of legal swill by Attorney Dickstein in this case. This is so even if defendant, who recites his approval of Attorney Dickstein's pleadings, likes the recipe.
920 F.2d at 624.

stein's admission *pro hac vice.* Dickstein unsuccessfully petitioned the Tenth Circuit for a writ of mandamus. The federal public defender was appointed to represent Collins. Collins was subsequently convicted.

Collins appealed his conviction. Dickstein did not join in that appeal or appeal separately. On appeal, Collins argued that the district court's order revoking Dickstein's admission *pro hac vice* violated his right to counsel of his choice. After considering the frivolous nature of the pleadings filed by Dickstein, the Tenth Circuit concluded:

> In this case, the district court correctly balanced defendant's right to retain counsel of his choice against society's need for the orderly administration of justice and the ethical practice of law. We hold that the court acted properly to maintain the integrity of the proceeding by discharging defendant's counsel of choice from further participation in the case.

920 F.2d at 634.

Although Dickstein did not join in Collins' direct appeal or appeal separately, Dickstein subsequently attempted to collaterally attack the district court's revocation of his admission pro hac vice. *See United States v. Collins,* No. 94–6176, 1995 WL 94471 (10th Cir. Feb. 27, 1995) (affirming district court's denial of Dickstein's Rule 60(b)(4) motion to vacate the orders revoking his ability to appear pro hac vice); *See United States v. Collins,* No. 95–6275, 1996 WL 180102 (10th Cir. April 16, 1996) (Tenth Circuit rejects Dickstein's attempt to use the All Writs Act, 28 U.S.C. § 1651, to collaterally attack the final orders revoking his pro hac vice status in *Collins* ). *United States v. Dickstein,* 971 F.2d 446 (10th Cir.1992).

Dickstein was admitted pro hac vice to represent James Mauldin. After a mistri-

al, the district court revoked Dickstein's permission to appear pro hac vice based upon the district court's conclusion that his conduct was improper and beyond tolerable bounds. Dickstein's petition for mandamus from the Tenth Circuit was denied. Dickstein then filed an immediate appeal of the order of revocation to the Tenth Circuit, which held that it lacked jurisdiction to hear his appeal because the order revoking his pro hac vice status is a nonfinal order which is not appealable under the collateral order doctrine. 971 F.2d at 447.

In *United States v. Holland,* No. 94–5234, 1995 WL 539589 (10th Cir. Sept. 11, 1995), following Mauldin's guilty plea and final judgment, Dickstein appealed the order revoking his admission pro hac vice. The Tenth Circuit affirmed, finding no due process violation and that the district court's factual findings were not clearly erroneous. In *Holland,* the Tenth Circuit set forth a partial list of Dickstein's conduct during Mauldin's trial:

> Some of the specific instances of such conduct it cited include Dickstein's taking the position that the jury had no obligation to follow the law as announced by the court, whispering loudly enough so the jury could hear that government counsel were guilty of introducing perjured testimony, and smiling and shaking his head in mock disbelief when the court announced adverse rulings.

*Id.* at *1.

### Analysis [6]

■ The court finds that under D.Kan. Rule 83.5.4, Dickstein was obligated to list each of these disciplinary actions initiated by other federal courts. Based upon Dickstein's statements to the magistrate judge it appears that the disciplinary proceedings initiated by the State Bar of California may have

---

**6.** At the outset, the court notes that Dickstein has been provided notice and an opportunity to be heard, which is all that is required prior to revoking his admission *pro hac vice. See Holland,* 1995 WL 539589 at *2. Had Dickstein appeared at the June 7, 1996, the court would have first addressed the government's motion to

reconsider his admission *pro hac vice.* As he did not appear, Dickstein's opportunity to address the court personally is deemed waived.

In light of the parties' written briefs, the court does not believe that oral argument would have assisted in the disposition of the pending motions.

stemmed from two of the events set forth in the chronology above. Nevertheless, even by Dickstein's own account, he omitted one prior disciplinary proceeding or grievance. The fact those events arose six or more years ago is of no consequence; under the rules of this court, Dickstein was obligated to disclose each and every disciplinary or grievance proceeding in his affidavit. The rules afford no equivalent of a statute of limitations, nor may Dickstein craft one on his accord.[7] Nor does the fact that Dickstein challenged or continues to challenge those findings by other courts justify omitting those instances from his affidavit.

■ Although Dickstein's affidavit is materially deficient, perhaps more disturbing to the court is the apparent lack of candor in the statements he made in response to the magistrate judge's inquiry. Frankly, Dickstein's responses to the magistrate judge's questions were not completely truthful and/or accurate. Through his statements to the magistrate judge, Dickstein suggested that his past ethical difficulties stemmed entirely from "frivolous pleadings."[8] Dickstein's past ethical transgressions have included more than the filing of frivolous pleadings. Such a mischaracterization of his past ethical transgressions is false and misleading and in and of itself constitutes a violation of this court's *Standards of Professional Conduct. See* D.Kan.Rule 83.6.1(a) ("The *Code of Professional Responsibility* and the *Model Rules of Professional Conduct* as adopted by the Supreme Court of Kansas, and as amended by that court from time to time, except as otherwise provided by

a specific rule of this court, are adopted by this court as the *Standards of Professional Conduct.*"); *Model Rules of Professional Conduct*, **Rule 3.3 Candor Toward the Tribunal** ("(a) A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal.").

The preamble to the Model Rules of Professional Conduct notes that "the legal profession is largely self-governing." To operate, our judicial system relies in substantial part upon the truthful and candid participation of attorneys.[9] When an attorney does not abide by the Standards of Professional Conduct, the judicial system is undermined, the court's resources are taxed, and the public's confidence in the legal profession is shaken. Dickstein's lack of candor in this case has caused the court to divert substantial time and resources to address this issue. In short, Dickstein has fallen far short of the standards of conduct expected and demanded by this court.

■ In reaching this decision, the court recognizes that the revocation of Dickstein's admission *pro hac vice* implicates the defendant's constitutional right to counsel of choice. *See Collins*, 920 F.2d at 626. In revoking Dickstein's admission *pro hac vice* the court has balanced Howell's constitutional right to retain counsel of his choice "against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice." *Id.* On balance, confronted with Dickstein's past ethical violations, his

---

7. Dickstein's implicit suggestion that these instances of misconduct are all "water under the bridge" is belied by his conduct in this case. While it is true that nothing filed in this case by Dickstein can be characterized as frivolous, his failure to appear as scheduled on June 7, 1996, was disruptive to the court's schedule. More importantly, Dickstein's lack of candor in his affidavit and responses to the magistrate judge's inquiry evidence a lack of comprehension or an utter disregard for the ethical obligations imposed by the *Standards of Professional Conduct.*

8. Dickstein's statements to the magistrate judge concerning "juror affidavits" and his conduct during the "first trial" is, at best, an oblique suggestion that his ethical difficulties stemmed from matters other than the filing of frivolous

pleadings. At no point does Dickstein affirmatively attempt to clarify his prior statement that the two disciplinary proceedings listed in his affidavit stemmed from filing frivolous pleadings. No matter how Dickstein's statements to the magistrate judge are diced, they cannot be considered completely truthful or accurate.

9. Prior to the advent of computerized research, searching reported cases for ethical violations by a particular attorney would have been a Herculean task. Computerized research enabled the court to quickly search for every reported state and federal case containing Dickstein's name. However, the court should not be required to run an independent check to verify the statements made by an attorney seeking admission *pro hac vice.*

false and misleading statements to the magistrate judge in this case, and the court's concern that such conduct may again occur, the court concludes that it is appropriate to deny Dickstein's admission *pro hac vice.* *See Id.*

In sum, the court finds that Dickstein's omissions and misstatements in his affidavit *and* his responses to the magistrate judge were materially misleading and that had the court been aware of Dickstein's prior ethical violations, Tilton's motion to admit Dickstein *pro hac vice* would have been denied at the outset. Based upon these findings, the court grants the government's "Motion for reconsideration of admission *pro hac vice* of Jeffrey A. Dickstein" (Dk. 14).

IT IS THEREFORE ORDERED that the government's "Motion for reconsideration of admission *pro hac vice* of Jeffrey A. Dickstein" (Dk. 14) is granted. Jeffrey A. Dickstein's admission *pro hac vice* in *United States v. Albert Ervin Howell,* Case No. 96–40027–01–SAC, is revoked.